IN THE UNITED STATES DISTRICT COURT

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

OCT 0 4 2010

TRUSTEES OF THE SOUTHWEST MULTI-CRAFT
HEALTH & WELFARE TRUST FUND, TRUSTEES
OF THE WEST TEXAS & SOUTHERN NEW MEXICO
BAC JOINT APPRENTICESHIP & TRAINING TRUST
FUND, BUILD NEW MEXICO,

**MATTHEW J. DYKMAN**
CLERK

       Plaintiffs,

vs.

Civ. No. 09-1134 MV/RHS

NH MASONRY, FRONTERA, NARCISO
HERNANDEZ, d/b/a NH MASONRY, d/b/a
FRONTERA,

       Defendants.

**AMENDED**
**REPORT AND RECOMMENDATIONS**

Plaintiffs filed their Motion for Default Judgment on January 12, 2010 (docket no. 10).

Thereafter, the trial court entered its Order of Reference directing the undersigned pursuant to the

provisions of 28 U.S.C. §636 to conduct a hearing, including an evidentiary hearing if warranted,

and to perform any legal analysis required to recommend to the Court whether and to what extent

the damages, fees, and other forms of relief sought by Plaintiffs in their Motion for Default

Judgment should be awarded. In accordance with that Order, the undersigned set an evidentiary

hearing for July 1, 2010, at 9:00 a.m. Plaintiffs' attorney appeared personally together with his

clients. Defendants failed to appear nor did they contact the Court or counsel for the Plaintiffs to

indicate any reason that they could not appear because of emergency, misscheduling, or

otherwise.

-1-

At the evidentiary hearing of July 1, 2010, the Plaintiffs presented legal argument to the Court, the testimony of Marvin Duran, Michael Busse, and Nicholas Bergquist. Plaintiffs also submitted the following documentary evidence which were collectively admitted into evidence by the Court:

1.      A summary of NH Masonry combined totals due as of July 1, 2010.

2.      The resume of Michael Busse.

3.       A summary of the NH Masonry audit results.

4.      The affidavit of William G. Walker in Support of Claim for Attorney's Fees for Default Motion (the Court has filed this affidavit with the Clerk of the Court).

5.      A copy of the New Mexico Collective Bargaining Agreement for April 1, 2007 to March 31, 2010, which is the subject of the instant lawsuit.

6.      Two photographs depicting a sign posted by NH Masonry stating "build union" and a photograph of various individuals including the Defendant Mr. Hernandez taken at the time of the execution of the collective bargaining agreement.

7.      An example of the reporting form used by the International Trowel Trades Fringe Benefit Funds as the same applies to Mr. Hernandez.

8.      A copy of the Southwest Multi-Craft Health & Welfare Trust Fund collective procedures.

9.      The affidavit of Laure van Heijenoort in Support of Claim for Costs for Default Motion (the Court has directed the filing of this affidavit).

10.     The affidavit of Angela M. Board in Support of Claim for Costs for Default Motion (the Court has directed the filing of this affidavit).

-2-

11.     A copy of legal authority submitted by counsel for Plaintiffs.

12.     NH Masonry Account 02-8702 with interest through July 1, 2010.

After consideration of all of the pleadings on file in the above-captioned cause, the

arguments and statements of counsel for the Plaintiffs, the testimony and evidence presented at

the evidentiary hearing, the Court hereby enters the following findings of fact and conclusions of

law.

### *Findings of Fact*

1.     On December 2, 2009, Plaintiffs filed their Complaint for Delinquent

Contributions under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974,

as amended, 29 USC §§ 1132 and 1145, respectively ("ERISA"), and for Injunctive Relief for

Breach of Collective Bargaining Agreement. Document No. 1, 12/02/2009.

2.     The Complaint and process were properly served upon Defendants NH Masonry,

FRONTERA, and Narciso Hernandez, Individually and d/b/a NH Masonry and FRONTERA by

personal service on Narciso Hernandez, at 115 Valle Vista, Sunland Park, New Mexico, 88063,

as shown by the Proofs of Service made out on December 14, 2009 and filed with this Court on

January 6, 2010. Document Nos. 5, 6, and 7, 01/06/2010.

3.     The Motion for Default Judgment was filed on January 12, 2010, Document 10,

and served upon the Defendants at the address at which personal service was effected by First

Class Mail on January 12, 2010. Document No. 11, 01/12/2010.

4.     The District Court Clerk entered his Entry of Default on February 1, 2010,

Document No. 14, 02/01/2010.

5.     The Court referred the matter to United States Magistrate Judge Robert Hayes

Scott for an analysis and evidentiary hearing on Damages, Fees, and Other Relief. Document No. 16, 06/07/2010.

6.     The Magistrate Judge set an evidentiary hearing on July 1, 2010, Document No. 17, 06/07/2010, and sent notice of the hearing to all parties on June 7, 2010. Document No. 18, 06/07/2010.

7.     At the hearing on July 1, 2010, the Court reviewed documents and received testimony from Marvin Duran, Apprenticeship Coordinator, on behalf of Local Union No. 3, Arizona-New Mexico-Texas, International Union of Bricklayers & Allied Craftworkers. He testified that he personally knows the Defendant, Narciso Hernandez, his companies, Frontera and N.H. Masonry, and he identified a true and accurate copy of the Collective Bargaining Agreement (the "CBA") signed between Defendants and the Union. The fully executed copy of the Collective Bargaining Agreement was admitted into evidence. Neither Defendants Frontera nor its successor company, N.H. Masonry, are incorporated and both are owned by Defendant Narciso Hernandez. Mr. Hernandez signed the CBA on August 15, 2007.

8.     The CBA provides that:

A.     It covers all jurisdictional work, as defined in Article I, Section 2, and its term runs from April 1, 2007 to March 31, 2010. It was automatically extended until March 31, 2011 and so on year to year, by Article II, Section 1, because it was not terminated in writing, pursuant to the CBA's terms, by December 1, 2009. It is likewise extended again from year to year unless terminated by December 1 of the year prior to expiration. So, for example, it will extend again for another year unless terminated in writing before December 1, 2010. Mr. Duran testified that neither party had terminated the Agreement and it is therefore extended until at least

-4-

March 31, 2011 inclusive.

B.      In Article X – FRINGE BENEFITS - the CBA provides for employer fringe benefit contributions to the Plaintiffs for each hour worked for each covered employee at the rates set forth in Article XVIII – WAGES - and in the Complaint, Document No. 1, paragraph 10.

C.      The Plaintiffs' Trust Agreements and Declarations of Trust are incorporated into and bind the Defendants by Article X, Section 2 of the CBA, and the Defendants agree to be bound by "all actions of the Trustees of these funds pursuant to said Agreements and Declarations of Trust."

D.      By Article XIX - BONDING - of the CBA, the Defendants agreed to post a bond to "secure payment of wages, benefit contributions, and other sums due under this agreement." By Article X, Section 2, Defendants agreed to collection efforts of the Plaintiffs and "all actions of the Trustees." Plaintiffs, by Section II of the Collection Procedures require a bond or cash deposit at Union Savings Bank in the name of the Plaintiffs on a delinquent employer of three months of fringe benefit contributions and have determined that amount to be $25,000.00. See Complaint, Document No. 1, paragraphs 19 - 23.

E.      By Section 6 of Article X of the CBA, the Defendants agree to cooperate with the auditors for the Trust Funds and to bear the costs of a target audit.

F.      By Section 7 of Article X of the CBA, the Defendants agree to pay all costs of collection, including attorneys fees and liquidated damages incurred by the Trust Funds.

9.      Two auditors testified for the Plaintiffs, Nicholas Tori Bergquist and Michael Busse, whose credentials, education, and experience qualified them to present testimony as to the

-5-

assessment of delinquent fringe benefit contributions, interest, and liquidated damages. Both men have college degrees and work for the Trust Fund Office in auditing and collecting fringe benefit contributions from employers.

10. Mr. Bergquist testified about the Trust Collection Procedures and the spreadsheet he prepared showing the fringe benefit contribution amounts per hour of work, the rate of interest (18% per annum) on delinquent contributions, and the liquidated damages on very delinquent contributions plus showing the accumulated totals of each, that the contributions are due by the 15th day of the month after work is performed and that he originally prepared the spreadsheet for the fringe benefit contributions that the Defendants' reported to the Trust Fund Office, but for which Defendants did not provide payment, and the interest and liquidated damages that had accrued. He then added in the unreported and unpaid delinquent contributions determined by Mr. Busse's target audit of the Defendants and calculated the interest and liquidated damages due on those amounts.

11. Mr. Bergquist's spreadsheet lists the CBA contribution rates as $3.00 per hour owed to the Plaintiff Southwest Multi-Craft Health and Welfare Trust Fund; $0.10 per hour owed to the Bricklayers Apprenticeship Trust Fund, and $0.04 per hour owed to Build New Mexico. When the money for worked hours is not received on time, interest begins to accrue pursuant to the Health and Welfare and Apprenticeship Trust Funds' Collections Procedures at 18% per annum. If it is still not received within 60 days of the due date, liquidated damages are assessed at an additional 18% per annum starting on the 60th day. Build New Mexico does not assess interest or liquidated damages for late contributions.

12.     Mr. Busse testified that he was charged by the Plaintiffs with performing a target

audit of Defendants' books and records because of reports that all hours worked were not being reported to Mr. Bergquist and the Trust Fund Office. He worked with Defendants to obtain these records and found substantial discrepancies showing unreported hours worked by covered bricklayers.

13.    Mr. Busse testified that his target audit is not yet completed because he has only been able to calculate the unreported fringe benefits for the period October 2008 through December 2009, inclusive, as Mr. Hernandez has failed to provide the remaining records. Mr. Hernandez has repeatedly reported to Mr. Busse that he will send the records for the period before October 2008 and the entirety of 2010 but then does not send them, claiming that he cannot find the records or that the records are at the payroll service. Mr. Busse was then told by the payroll service that Mr. Hernandez has the records. Some of Defendants' employees have provided information that Defendants had engaged in work covered by the CBA both prior to October 2008 and during 2010.

14.    Mr. Walker stated that he personally spoke with Jacob Livingston of LSL Investments in El Paso, Texas, who reported that his company had employed NH Masonry to build a storage complex in El Paso that was completed approximately June 1, 2010.

15.    Mr. Busse stated that Defendants have not provided any records relating to the building of anything in 2010, he has no payroll records from before October 2008 or for 2010, and that he has not therefore been able to complete his audit. His audit effort is therefore ongoing. An Order of this Court compelling production of the Defendants' records, timesheets, certified payrolls, checkbook, and paycheck stubs may be necessary at a future date.

16.    Mr. Busse provided his partially completed target audit results to Mr. Bergquist

-7-

who then added the additional hours into his spreadsheets and combined the unpaid reported and

unreported but worked jurisdictional hours into the same spreadsheet. Mr. Bergquist then

calculated the interest and liquidated damages owed on all of the covered hours worked and

reported or discovered so far. The spreadsheet used the contribution rates in the CBA and

Complaint.

17.     Mr. Bergquist presented his spreadsheet as the true and correct amounts of unpaid

reported and unreported fringe benefit contributions discovered to date plus interest and

liquidated damages through July 1, 2010. That spreadsheet was admitted. The totals are:

A.     The total of unpaid fringe benefit contributions is **$18,045.35** and the

unpaid fringe benefit contributions owed to:

1.     The Southwest Multi-Craft Health and Welfare Trust Fund is

**$16,729.70;**

2.     The Bricklayers Apprenticeship Trust Fund is **$781.26;** and

3.      Build New Mexico is **$534.39.**

B.     Interest at 18% on the unpaid fringe benefit contributions through July 1,

2010 is **$6,211.31.**  The interest owed to:

1.     The Southwest Multi-Craft Health and Welfare Trust Fund is

**$5,954.52**; and

2.     The Bricklayers Apprenticeship Trust Fund is **$256.79.**

C.     Liquidated damages on the unpaid fringe benefit contributions through

July 1, 2010 is **$5,381.37** and the liquidated damages owed to:

1.     The Southwest Multi-Craft Health and Welfare Trust Fund is

-8-

**$5,154.38**; and

2.      The Bricklayers Apprenticeship Trust Fund is **$226.99**.

The total of the unpaid fringe benefit contributions, interest, and liquidated damages is

**$29,638.03**

18.      Since the CBA and § 502(g)(2)(D) of ERISA, 29 USC § 1132(g)(2)(D) provide

that Defendants are liable for the costs of a target audit, Mr. Busse has provided an affidavit that

reflects Mr. Busse's time on the target audit to date in the amount of **$3,611.25.** Document No.

24, 07/20/2010.

19.      Mr. Walker presented and affirmed Affidavits from himself, his partner, Laure

van Heijenoort, and his legal assistant, Angela Board, See Document Nos. 20 – 22, 07/06/2010,

in support of his claim for attorneys' fees under § 502(g)(2)(D) of ERISA, 29 USC §

1132(g)(2)(D). The rates charged for each hour worked are $300.00 per hour for Mr. Walker and

Ms. van Heijenoort and $100.00 per hour for the firm's legal assistant, Angela Board. Each

affidavit details the decades of experience in ERISA multiemployer trust fund work, the broader

background of work as Assistant Attorneys General, litigators, and the many trust funds

represented. Mr. Walker's affidavit attaches as Exhibit A an affidavit from Philip B. Davis, Esq.

supporting their rate and claim for attorneys fees in trust fund litigation.

20.      Detailed time records for his firm are attached to Mr. Walker's Affidavit

reflecting in satisfactory detail the time spent in tenths of hours trying to collect this

delinquency. While ERISA § 502(g)(2)(D), and the CBA provide for charging Defendants with

payment of all the attorneys' fees involved in collecting such delinquencies, for purposes of the

default judgment Mr. Walker exercised billing judgment and reduced the claim from 29.90 hours

of attorney time and 26.90 hours of legal assistant time to 8.30 hours of attorney time and 3.40

hours of legal assistant time. The monetary reduction was from $11,660.00 to $2,830 plus tax.

Much of the deleted time was devoted to investigations, meetings with clients and auditors,

document review, and hours of telephone calls with Mr. Hernandez. The time claimed was

reduced to the more narrow direct preparation of the lawsuit.  Corrected calculations were

supported by Mr. Walker's Amended Affidavit of September 30, 2010, Document No. 29,

9/30/2010.

     21.    At the request of the Court, Mr. Walker presented a Supplemental Affidavit

supporting his prior claim for attorneys fees plus four (4) hours of time preparing for and

attending the July 1, 2010 hearing and drafting proposed Findings and Conclusions. His firm's

total attorneys' fee claim for this default is $4,030.00 plus gross receipts tax of $282.10 for a

total of **$4,312.10.** Document No. 26, 07/21/2010.

     22.    Mr. Walker also presented another affidavit in support of Plaintiffs' costs under §

502(g)(2)(D) of ERISA, 29 USC § 1132(g)(2)(D) in the amounts of the $350.00 filing fee and the

$120.00 service fee for a total of **$470.00**. See Document No. 9, 01/12/2010, page 3, and

Document No. 25, 07/21/2010.

     23. The sum total of Plaintiffs' claim to date is **$38,031.38.**

### *Conclusions of Law*

     1.    The time within which Defendants were allowed to answer or otherwise respond

to the Complaint expired, was not extended, and Defendants are in default pursuant to Rule 55

of the Federal Rules of Civil Procedure.

2.      Defendants were given notice of the July 1, 2010 hearing by the Court by mail to 115 Valle Vista, Sunland Park, New Mexico 88063, Document No. 17, but the Notice was returned to the Court as **"Return to Sender, Unclaimed, Unable to Forward,"** Document No. 23. Defendants did not appear at the July 1, 2010 hearing.

3.      The Motion for Default Judgment was filed on January 12, 2010, Document No. 10, 1/12/10 and served on Defendants on January 12, 2010, Document No. 11, 01/12/2010.

4.      This Court has personal jurisdiction over Plaintiffs and Defendants and the subject matter of the Complaint under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 USC §§ 1132 and 1145, respectively ("ERISA"), and specifically has jurisdiction pursuant to 29 USC § 1132(e)(1).

5.      The rates of interest and liquidated damages on delinquent contributions are reasonable and within the restrictions of § 502(g)(2)(B) of ERISA, 29 USC §1132(g)(2)(B), which provides for the collection of interest and liquidated damages (liquidated damages are limited to the same rate as the interest rate in the Trust Funds' Collection Procedures up to a maximum of 20% per annum for liquidated damages). Pursuant to ERISA, the CBA and the Collection Procedures, Plaintiffs are entitled to receive interest at 18% per annum and liquidated damages at 18% per annum from the 60th day the contributions are past due until the contributions are paid to the Plaintiffs Southwest Multi-Craft Health and Welfare Trust Fund and the Bricklayers Apprenticeship Trust Fund. Build New Mexico is entitled to pre-judgment interest at the rate of 10% from the date the Complaint was filed through the date of entry of judgment, NMSA 1978 § 56-8-4(B), and post-judgment interest at the rate set by 28 USC § 1961(a).

-11-

6.      The attorneys' fees at a rate of $300.00 per hour are reasonable and fair for attorneys of Mr. Walker's and Ms. van Heijenoort's experience in this field and in this community and the time claimed has been reviewed in detail by the Court and is fair and reasonable. The hourly rate for the firm's legal assistant, Ms. Board, is reasonable in light of her fourteen years experience working in the ERISA multiemployer trust fund field. Attorneys' fees should be awarded in an amount of **$4,312.10** and costs of **$470.00.**

7.      The rates charged for audits of $50.00 per hour are reasonable and fair and the time expended was reasonable and fair and should be awarded to Plaintiffs in the amount of **$3,611.25.**

8.      Pursuant to the terms of the Collective Bargaining Agreement between Defendants and the Union, Defendants were obligated to report the hours worked and the amounts of fringe benefit contributions owed and then to make the fringe benefit contributions to the Plaintiffs.

9.      Defendants did not consistently file Employer Reporting Forms which are necessary for the Plaintiffs to audit the Defendants. The Defendants did not provide all of the required records to allow for a complete audit. Plaintiffs are entitled to an Order requiring Defendants to produce all of the contracts, records, books, checkbooks, pay stubs, reports to government agencies showing employees, certified payrolls, workers compensation reports, or other documents with information relating to the work performed, workers employed, and compensation paid by Defendants from the date the CBA was signed on August 15, 2007 through the end of the extended agreement on March 31, 2011.

10.     Defendants failed to make the required fringe benefit contributions to the

Plaintiffs and Plaintiffs are entitled to judgment in the amount of **$29,638.03** for unpaid fringe benefit contributions, interest and liquidated damages.

11.    Pursuant to ERISA § 502(g)(2)(B), the Trust Funds' Collection Procedures and the CBA, interest and liquidated damages should continue to accrue at 18% per annum each on unpaid and uncollected delinquent fringe benefit contributions including amounts still to be discovered and those in this judgment.

12.    The audit must necessarily continue to be pursued and the Plaintiffs may be entitled to additional amounts of fringe benefit contributions, audit fees, costs including depositions and other discovery, and attorneys' fees. This Court shall retain jurisdiction and the Plaintiffs may file for supplemental relief, fees, contributions, interest, liquidated damages, costs, audit and attorneys' fees.

13.    An Order should enter forthwith directing Defendants to produce any and all records of hours worked, employees, wages, deductions, projects or jobs worked, contracts, and identification of general contractors.

14.    Plaintiffs are entitled to an Order directing Defendants to post a bond or make a cash deposit at Union Savings Bank securing the payment of delinquent fringe benefit contributions in the amount of $25,000.00.

15.    The Court reserves jurisdiction to amend the amount of damages awarded for fringe benefits at such time as the 2008 and 2010 payroll records are submitted in a form which can be verified by audit.

-13-

16.     An order directing the Defendants to file the appropriate reporting forms together with payment for fringe benefit funds commencing July 1, 2010, shall issue forthwith and the Court reserves jurisdiction to enforce any noncompliance.

### *Recommendations*

1.      The Court enter judgment by default as requested by the Plaintiffs, reserving jurisdiction to amend the amount of damages awarded for fringe benefits at such time as the 2008 and 2010 payroll records are submitted in a form which can be verified by audit.

2.      Entry of an order directing Defendants to produce any and all records of hours worked, employees, wages, deductions, projects or jobs worked, contracts, and identification of general contractors.

3.      Entry of an order directing Defendants to post a bond or make a cash deposit at Union Savings Bank securing the payment of delinquent fringe benefit contributions in the amount of $25,000.00.

4.      Entry of an order directing the Defendants to file the appropriate reporting forms together with payment for fringe benefit funds commencing July 1, 2010, and the Court reserves jurisdiction to enforce any noncompliance.

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE